IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

RECEIVED
USDC. CLERK. CHARLESTON. SC

2008 MAR -3  P 1: 48

Deshawn O. Gibbs,          )
                           )
    Plaintiff,             )
                           )    C.A. No.: 4:05-1977-SB-TER
v.                         )
                           )    <u>ORDER</u>
Michael J. Astrue,         )
Commissioner of Social Security, )
                           )
    Defendant.             )
_____)

This is an action brought pursuant to Section 205(g) of the Social Security Act, codified at 42 U.S.C. § 405(g), to obtain judicial review of the Commissioner of Social Security's ("Commissioner") final decision, which denied Deshawn O. Gibbs's ("Gibbs" or "the Plaintiff") claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). The record includes a Report and Recommendation ("R&R") of United States Magistrate Judge Thomas E. Rogers, III, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(a). In the R&R, Magistrate Judge Rogers recommends that the Court reverse the Commissioner's final decision pursuant to sentence four of 42 U.S.C. § 405(g) and remand the case to the Commissioner for further administrative action. The Commissioner timely objected to the R&R, and the Plaintiff filed a response to the Commissioner's objections. See 28 U.S.C. § 636(b)(1) (providing that a party may object, in writing, to a Magistrate Judge's R&R within ten days after being served with a copy).

## BACKGROUND

### I. Factual and Procedural History

The Plaintiff was born on December 10, 1975, and was 28 years old on the date of

his hearing before the ALJ. He completed the tenth grade and attended a portion of the eleventh grade but never obtained a GED. He has worked in the past as a dredge boat worker and a landscaper.

The Plaintiff filed applications for DIB and SSI on August 13, 2002, with a protective filing date of July 22, 2002, and alleging disability since June 26, 2002, due to below-the-knee amputation, back pain, headaches, allergies, and depression. His applications were denied initially and upon reconsideration. On March 12, 2003, the Plaintiff filed a request for a hearing, and on February 25, 2004, a hearing was held before Administrative Law Judge ("ALJ") Richard L. Vogel in North Charleston, South Carolina. The Plaintiff, who was represented by counsel, appeared at the hearing and testified. Also, Vocational Expert ("VE") Dixon Peersall, Ph.D appeared and testified. In his decision dated November 1, 2004, the ALJ determined that the Plaintiff was not disabled. The Appeals Council denied the Plaintiff's subsequent request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review under 42 U.S.C. § 405(g). On July 12, 2005, the Plaintiff filed the present action seeking judicial review.

## II.    Medical Evidence

On June 26, 2002, the Plaintiff was struck by an automobile, resulting in injuries that required a below-the-knee amputation of his right leg. (Tr. at 166, 212.) Subsequently, due to an infection, the Plaintiff underwent an above-the-knee amputation of his right leg. (Tr. at 53.) The Plaintiff's injuries required prolonged treatment, including physical rehabilitation. (Tr. at 166-223, 240-44, 251-53, 254-60, 293-94, 295-476.) While recovering at home, the Plaintiff contacted the Charleston County EMS due to extreme pain. The emergency medical technicians lost their balance while attempting to lift the

Plaintiff in his wheelchair, resulting in the Plaintiff being dropped down approximately six stairs. Then, while on the way to the hospital, the ambulance was involved in an automobile accident, causing further injury to the Plaintiff. (Tr. at 504-05.)

The Plaintiff's treating physician, Jeffrey Buncher, M.D., initially evaluated the Plaintiff in August of 2002 for injuries sustained as a result of being dropped in his wheelchair. Dr. Buncher noted that the Plaintiff complained of mid and low back pain, right lower extremity pain, and bilateral trapezius pain. (Tr. at 346.) The Plaintiff returned to Dr. Buncher for numerous follow-up examinations in September, October, November, and December of 2002. In a letter dated December 16, 2002, Dr. Buncher summarized his findings from each of these visits, noting that the Plaintiff complained of lower and middle back pain and reported increased phantom pain in the amputation site. (Tr. at 327.) Dr. Buncher also noted that the Plaintiff remained wheelchair-bound and was unable to perform his regular activities. Dr. Buncher opined that the Plaintiff remained disabled and stated that the Plaintiff "continues to experience significant pain throughout the spine and, therefore, is unable to participate in frequent bending, lifting, stretching, or rotation of the spine." (Tr. at 328.)

On September 10, 2002, a state agency physician reviewed the medical records and analyzed the Plaintiff's residual functional capacity, ultimately determining that the Plaintiff could perform a range of sedentary work. (Tr. at 228-39.) The physician indicated that the Plaintiff could lift, carry, push, and pull ten pounds occasionally or frequently; stand or walk at least two hours in an eight-hour workday; sit about six hours in an eight-hour workday; occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; and never climb ladders, ropes, ands scaffolds or crawl. (Tr. at 234-35.)

In November of 2002, the Plaintiff complained of back pain but said that acupuncture had been helpful. (Tr. at 336.) An MRI taken on December 31, 2002, revealed mild degenerative changes in the cervical spine. (Tr. at 321.) On February 3, 2003, the Plaintiff reported to the emergency room complaining of sinus congestion and was diagnosed with sinusitis. (Tr. at 254.)

On February 5, 2003, John Custer, M.D. evaluated the Plaintiff at the request of the Commissioner. (Tr. at 261-64.) Dr. Custer noted that the Plaintiff drove himself to the examination. The Plaintiff complained that he was suicidal and could not cope with having one leg amputated. Also, the Plaintiff told Dr. Cussler that he often quit taking his medications due to frustration. The Plaintiff said that he had been referred to a psychologist but refused to go. The Plaintiff admitted to drinking alcohol daily and using marijuana on a recreational basis. Dr. Custer diagnosed the Plaintiff with alcohol dependence, marijuana dependence, phantom limb pain, antisocial personality disorder, and status post below-knee amputation on the right. Dr. Custer concluded that the Plaintiff's substance abuse and sociopathic traits impaired his ability to recover and that the Plaintiff should not be placed in charge of his own funds.

On February 12, 2003, Mason Ahearn, M.D. evaluated the Plaintiff at the direction of the Commissioner. (Tr. at 265-66.) The examination revealed limited cervical motion but no other cervical abnormalities. Dr. Ahearn stated that assessing the Plaintiff from a functional standpoint was difficult but that the Plaintiff could become more functional if he attained independent ambulation on a prosthesis. He noted that the Plaintiff demonstrated no difficulties in his upper extremities but opined that the Plaintiff had psychological problems and is probably not gainfully employable in any area.

4

On February 24, 2003, Dr. Buncher noted that the Plaintiff desired to walk with a prosthesis. (Tr. at 310.)

On February 26, 2003, a state agency physician reviewed the medical records and analyzed the Plaintiff's physical residual functional capacity. The physician indicated that the Plaintiff could perform a range of sedentary work, i.e., lift, carry, push, and pull ten pounds occasionally or frequently; stand or walk at least two hours in an eight-hour workday; sit about six hours in an eight-hour workday; occasionally climb ramps and stairs, balance, stoop, kneel, crawl, and crouch; never climb ladders, ropes, and scaffolds; and occasionally reach overhead. (Tr. at 267-93.)

On January 16, 2004, the Plaintiff sought treatment for headaches at the emergency room at East Cooper Hospital. The physician noted that the Plaintiff was ambulatory. The Plaintiff was given medication for his flu-like symptoms. (Tr. at 469-76.)

On March 3, 2004, a report from Dr. Buncher's office by William Reese, M.A., L.Ac noted that the Plaintiff was suffering from a "severe and debilitating chronic sinusitis infection, which along with his other disabilities significantly affects his ability to function normally." (Tr. at 483.)

On March 6, 2004, L. Randolph Waid, Ph.D., a licensed psychologist, examined the Plaintiff as a follow-up to his initial consultation and interview held on April 8, 2003. (Tr. at 477-79.) Dr. Waid noted that the Plaintiff's phantom pain persisted and that the Plaintiff would be a good candidate for pain management with medication. Dr. Waid noted that the Plaintiff completed the Personality Assessment Inventory ("PAI") and his "response was consistent with clinical interview in revealing an individual who is quite negative about his current life. Test results likely reflect a 'cry of help' with an extreme negative evaluation of

his current circumstances." Further, Dr. Waid opined that

> consistent with that response set, there were significant elevations across multiple clinical scales. Profiles of this type are generally associated with an individual reporting marked distress and severe impairment in functioning. Separate scale elevations revealed endorsement of ongoing pain and somatic difficulties; depression, discouragement, and social withdrawal; discomforting level of anxiety and tension; and recurrent anxiety associated with his involvement in the traumatic event.

(Tr. at 479.) Dr. Waid also noted that the Plaintiff's responses to the Multidimensional Plan Inventory "failed to reveal a dysfunctional profile (i.e., one associated with an individual exaggerating his pain difficulties)."

### III.    Administrative Hearing Testimony

At the hearing before the ALJ held on February 25, 2004, the Plaintiff testified that he had phantom pain on his right as well as pain in his left leg due to a nerve having been removed and placed in his right leg. (Tr. at 498-99.) The Plaintiff testified that he used his wheelchair in the house but used the prosthesis when he left the house. (Tr. at 500.) He also testified that he had to use a cane from time to time to keep his balance. (Tr. at 501.) The Plaintiff complained of back pain and sinus problems and testified that he had numbness in his left arm, had problems with depression, and had tried to commit suicide.

## STANDARD OF REVIEW

### I.    The Magistrate Judge's R&R

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the Court. Mathews v. Weber, 423 U.S. 261, 269 (1976). The Court reviews de novo those portions of the R&R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the

Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

## II.     Judicial Review of a Final Decision

The role of the federal judiciary in the administrative scheme as established by the Social Security Act is a limited one. Section 205(g) of the Act provides that, "[t]he findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Consequently, judicial review . . . of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). "Substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). In assessing whether there is substantial evidence, the reviewing court should not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original).

## DISCUSSION

### I.     The Commissioner's Final Decision

The Commissioner is charged with determining the existence of a disability. The Social Security Act, 42 U.S.C. §§ 301-1399, defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). This determination involves the following five-step inquiry:

> [The first step is] whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App. I. If so, the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant form returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work.

Mastro, 270 F.3d at 177 (citing 20 C.F.R. § 416.920).

If the claimant fails to establish any of the first four steps, review does not proceed to the next step. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993). The burden of production and proof remains with the claimant through the fourth step. However, if the claimant successfully reaches step five, then the burden shifts to the Commissioner to provide evidence of a significant number of jobs in the national economy that the claimant could perform, considering the claimant's medical condition, functional limitations, age, education, and work experience. Walls, 296 F.3d at 290.

Here, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability, June 26, 2002. At the second step, the ALJ found that the Plaintiff established "severe" impairments (listed as a right above-the-knee amputation and back pain due to degenerative disc disease). Third, the ALJ found that these medically determinable impairments did not meet or medically equal any of the

criteria listed in 20 C.F.R. §§ 404.1520(c) and 416.920(b). The ALJ then determined that the Plaintiff's allegations and testimony regarding his limitations were not totally credible and found that the Plaintiff retained the residual functional capacity to perform a significant range of sedentary work activity with the following restrictions:

> [l]ifting and carrying up to 10 pounds occasionally and lesser amounts frequently, sitting for up to 6 hours in an 8-hour day, and occasionally standing and walking. The claimant is further restricted to a sit/stand option; use of cane while ambulatory; no climbing, balancing, stooping, kneeling, and crouching; occasional overhead reaching of the non-dominant arm; occasional fine manipulation of the non-dominant hand; no concentrated exposure to lung irritants; and a low stress, non-sequential production setting.

(Tr. at 62-63.) At step four, the ALJ found that the Plaintiff's residual functional capacity precluded him from returning to his past relevant work as a landscaper and dredge boat worker. At the fifth step, however, the ALJ found that the Plaintiff's residual functional capacity permitted him to perform a significant range of sedentary work, although not the full range of sedentary work. Examples of jobs recommended by the ALJ include surveillance system monitor and order clerk. (Tr. at 63.) Because the ALJ found that the Plaintiff could perform jobs that exist in significant numbers in the national economy, the ALJ concluded that the Plaintiff was not under a "disability" as defined in the Social Security Act. (Tr. at 62.)

## II. The Plaintiff's Complaint and the Commissioner's Response

On July 12, 2005, the Plaintiff filed the present action seeking judicial review of the Commissioner's final decision. In his complaint, the Plaintiff makes the following arguments:

(1) There is no substantial evidence on record to medically justify a finding by the ALJ under Hyatt v. Sullivan, 899 F.2d 329 (4th Cir.

9

        1990), in subsequent cases applying the same doctrine that the Claimant's pain is disabling, in light of the overwhelming evidence of record to support the credibility of the Claimant's testimony as to his chronic pain.

(2) It is error for the ALJ to consider testimony from the Vocational Expert (VE) based solely on the Dictionary of Occupational titles without additional testimony from the VE to support a finding that the job description is still applicable to the Claimant, when the Job Description has been superceded or updated by Onet.

(3) It is error for the ALJ to consider testimony from the Vocational Expert (VE) based solely on the Dictionary of Occupational titles <u>without additional testimony</u> from the VE to support a finding that the job description is still applicable to the Claimant, could be done as currently performed, when the Job Description in Onet [ ] was inconsistent with the Claimant[']s documented medical problems and his testimony.

(4) The ALJ erred in failing to consider a closed ended award or alternatively establish by medical evidence the point at which the claimant's total disability ended.

(Pl.'s Complaint at 9-10.)

In response to the Plaintiff's complaint, the Commissioner argues that the ALJ's findings are supported by substantial evidence and free of legal error. First, the Commissioner asserts that the ALJ properly evaluated the Plaintiff's subjective complaints of pain by citing specific portions of the Plaintiff's testimony and pointing to inconsistencies in the record that undermined the Plaintiff's credibility. With respect to the Plaintiff's arguments concerning the VE's testimony, the Commissioner asserts that the DOT is an appropriate source of occupational data, and the ALJ was not required to use Onet as a substitute. Lastly, the Commissioner asserts that the ALJ was not required to consider a closed period of benefits because the ALJ found that the Plaintiff failed to prove that he was unable to work for a period of twelve consecutive months.

## III. The Magistrate Judge's R&R

As previously mentioned, the Magistrate Judge recommended that the Court

reverse the Commissioner's final decision pursuant to sentence four of 42 U.S.C. § 405(g) and remand the case to the Commissioner for further administrative action. The Magistrate Judge based his recommendation on the Plaintiff's first argument – namely, that the ALJ erred in determining that the Plaintiff's allegations of disabling pain and limited functional capacity were not credible.

In considering the Plaintiff's allegations of pain, the Magistrate Judge noted that the findings of Dr. Waid, Dr. Buncher, and Dr. Ahearn provided objective medical evidence in support of the Plaintiff's allegations. For example, Dr. Waid evaluated the Plaintiff and noted that he complained of continuing persistent pain affecting his lower extremity, his left knee, and his back. Dr. Waid also noted that the Plaintiff complained of depression and not caring about anything when depressed. The objective findings of Dr. Waid's Personality Assessment Index of the Plaintiff reflected a profile consistent with an individual experiencing ongoing pain and somatic difficulties. Dr. Waid also noted that the results of the Plaintiff's testing "failed to reveal a dysfunctional profile (i.e. one associated with an individual exaggerating his pain difficulties.)" The Magistrate Judge ultimately concluded:

> Therefore, there was objective medical evidence to support Plaintiff's complaints and the ALJ did not conduct a proper analysis as to why Plaintiff's complaints were not credible based on the testimony and medical evidence. The ALJ discounted the opinions of Dr. Buncher and Dr. Ahearn finding that their opinions were based on the fact that Plaintiff was not able to ambulate with his prosthesis. However, there were no reports or evaluations by his treating physician, Dr. Buncher, or Dr. Ahearn since Plaintiff began using his prosthesis to see if this actually caused their opinion to differ with regard to his ability to work.
>
> It may well be that substantial evidence exists to support the Commissioner's decision as to the credibility of the Plaintiff in the instant case. The court will not, however, speculate on a barren record devoid of the appropriate

administrative analysis. In the absence of [ ] the proper analysis by the ALJ in not finding the Plaintiff's allegations credible, the court is unable to complete the review mandated by law. The undersigned does not find that the ALJ gave specific findings supported by specific evidence of record to find the Plaintiff's testimony not credible. Thus, the undersigned recommends that this case be remanded for proper consideration and explanation of findings as to the Plaintiff's subjective complaints considered with the medical evidence. On remand, the Commissioner can address these issues in accordance with Ruling 96-7p and Craig v. Chater, supra and may require a re-evaluation by the treating physician based on Plaintiff's ability to ambulate. If the treating physician's opinion now differs, he should indicate at what point in time the Plaintiff's disability ceased so that a closed ended award may be considered.

(R&R at 14-15.)

## IV.     The Commissioner's Objections and the Plaintiff's Response

The Commissioner objects to the R&R generally, asserting that it is conclusory. The Commissioner states, "the report concludes that the ALJ did not conduct a proper credibility assessment, but does not indicate what part of the assessment was in error" or that "based upon the evidence in the record, the credibility assessment was faulty." (Obj. at 1.) The Commissioner asserts that substantial evidence supports the ALJ's conclusion that the Plaintiff was not credible.

Also, the Commissioner asserts that the Magistrate Judge really was concerned that there were no reports or evaluations by Dr. Buncher or Dr. Ahearn after the Plaintiff began ambulating with a prosthesis. The Commissioner states: "In other words, although the report does not state it specifically, it appears that the Magistrate Judge believes that the ALJ did not fully develop the record. That conclusion is erroneous. . . . Here, as demonstrated in the Commissioner's opening memorandum, there was sufficient evidence for the ALJ to make a decision and no further development was needed."

The Plaintiff filed a response to the Commissioner's objections, generally outlining

12

the evidence supporting the Plaintiff's complaints of pain and asserting that the Magistrate Judge correctly determined that the ALJ erred in his credibility assessment by failing to point to evidence supporting his conclusion. Lastly, the Plaintiff urges the Court to consider the additional grounds he asserted in his complaint (that the Magistrate Judge did not consider) should the Court disagree with the Magistrate Judge's recommendation.

## V.    This Court's Analysis

After careful review, the Court concludes that the ALJ's denial of benefits is not supported by substantial evidence because, as the Magistrate Judge concluded, the ALJ did not perform a proper credibility analysis with respect to the Plaintiff's allegations of pain.

A claimant's subjective complaints of pain are evaluated under a two-part test. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). Thus, an ALJ must specifically consider the threshold question of whether a claimant demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain he or she alleges. Only after a claimant has made this threshold showing of a medical impairment likely to cause pain must "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work . . . be evaluated." Id. at 595. In making these determinations:

> It is not sufficient for the adjudicator to make a single, conclusory statement that the "individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any

13

> subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

S.S.R. 96-7p, 1996 WL 374186, at *2 (1996); see also Hines v. Barnhart, 453 F.3d 559, 564 (4th Cir. 2006) ("Having met this threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, Mr. Hines was entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that his pain is so continuous and/or severe that it prevents him from working a full eight hour day."); Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985) (stating that credibility determinations "should refer specifically to the evidence informing the ALJ's conclusion"); Hatcher v. Secretary, 898 F.2d 21, 23 (4th Cir. 1989) (quoting Hammond).

Here, the ALJ concluded that the Plaintiff's testimony did not fully support a finding that the Plaintiff was unable to work. In support of this conclusion, the ALJ referred to evidence of noncompliance in the record, noting that the Plaintiff refused to see a psychologist at one point and refused back surgery. The ALJ then stated: "Objective evidence fails to support the claimant's complaints. Rather, it reveals that the claimant suffered from motivational problems." (Tr. at 57.)

Contrary to the ALJ's conclusion that "[o]bjective evidence fails to support the claimant's complaints," the Court finds that the record in this case clearly indicates that the Plaintiff met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed. The Plaintiff, as previously set forth, suffered from pain in his lower extremity, his left knee, and his back due to his pedestrian-automobile accident that required partial amputation of his right leg as well as the ambulance accident that occurred subsequent to the amputation. Indeed, the records of

Dr. Waid, Dr. Buncher,[1] and Dr. Ahearn, as previously summarized in greater detail, all indicate that the Plaintiff suffered from continuing pain. Additionally, when Dr. Waid administered a Multidimensional Pain Inventory to the Plaintiff, it failed to indicate a profile associated with an individual exaggerating his pain difficulties. In view of the objective medical evidence supporting the Plaintiff's complaints of pain, the Court finds that the ALJ erred in determining that objective evidence did not support the Plaintiff's complaints. In essence, the ALJ failed to apply the appropriate law, namely, the two-part test outlined in Craig v. Chater, 76 F.3d 585, and subsequent Fourth Circuit cases. Based on this error, the Court cannot find that substantial evidence supports the ALJ's decision, and therefore, the Court finds that a remand of this matter for further consideration and evaluation is appropriate.

On remand, the Commissioner is directed to evaluate the credibility of the Plaintiff's complaints of pain in accordance with the two-part test set forth in Craig v. Chater, 76 F.3d 585. The Commissioner is also directed to pay special attention to Social Security Ruling 96-7p. Lastly, the Court agrees with the Magistrate Judge that on remand, the

---

[1] Although the Court recognizes that Dr. Buncher's opinion as the treating physician is not necessarily binding upon the Commissioner, Dr. Buncher's opinion nevertheless is entitled to substantial weight, as objective medical facts and the opinions and diagnoses of the treating and examining doctors constitute a major part of the proof to be considered in a disability case. See, e.g., Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir.1987) (holding that a treating physician's opinion is entitled to great weight if not contradicted by persuasive evidence); Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1987) (stating that the treating physician's opinion is "entitled to great weight for it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time" and should be disregarded "only if there is persuasive contradictory evidence"). The opinion of a treating physician is entitled to more weight than a non-treating physician and will be granted controlling weight if the opinion is supported by medically acceptable techniques. 20 C.F.R. § 404.1527; see Winford v. Chater, 917 F. Supp. 398, 400 (E.D. Va. 1996).

Commissioner may need to reevaluate the Plaintiff's treating physician regarding the Plaintiff's ability to ambulate with a prosthesis so that a closed-ended award may be considered, especially if the Commissioner bases any credibility determination on the Plaintiff's ability to ambulate with a prosthesis.

## CONCLUSION

After a careful examination of the record, the Court cannot conclude that the ALJ's decision is supported by substantial evidence. Based on the foregoing, it is therefore

**ORDERED** that the R&R is adopted and incorporated herein; the Commissioner's denial of benefits is reversed under sentence four of 42 U.S.C. § 405(g) and 1383(c); and the matter is remanded to the Commissioner for further consideration in accordance with this Order.

**IT IS SO ORDERED.**

The Honorable Sol Blatt, Jr.
Senior United States District Judge

February 29, 2008
Charleston, South Carolina

#16